**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

DEBRA GRAGSTON,                                            Case No. 1:14-cv-986

               Plaintiff,                               Dlott, J.
                                                          Bowman, M.J.

     v.

COCA-COLA REFRESHMENTS,

               Defendant.

## REPORT AND RECOMMENDATION

### I. Background

On December 30, 2014, Plaintiff, proceeding *pro se*, filed a motion seeking to initiate this lawsuit *in forma pauperis* against her employer, Defendant Coca-Cola Refreshments. Plaintiff generally alleges discrimination on the basis of her race (African American) and gender (female). (Doc. 3). Plaintiff's motion was granted, and her complaint was filed on January 6, 2015.

In lieu of an answer, Defendant filed a motion to compel arbitration and to dismiss Plaintiff's complaint. Thereafter, Plaintiff sought the Court's assistance in obtaining counsel. Defendant's motion was stayed pending that request. Plaintiff's request for representation through the Voluntary Lawyers Project program ultimately was successful, and on July 2, 2015, counsel entered his appearance on her behalf and responded to the pending motion. On July 23, 2015, Defendant filed a reply memorandum in support of its motion to compel arbitration.

**II.  Defendant's Motion to Compel Arbitration/ Dismiss**

**A.  The Existence of an Arbitration Agreement**

Defendant contends that this case should be dismissed, because Plaintiff is contractually bound by an employment contract that requires her to arbitrate the present dispute under its "Solutions" program.  Plaintiff argues in response that she did not assent to the arbitration term, and therefore that she should not be contractually bound.

The Federal Arbitration Act reflects a strong federal policy in favor of arbitration, and explicitly provides that:

> A written provision in any…contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction…shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. §2.  Despite the strong federal policy reflected in the statute, this Court retains jurisdiction to determine the validity of the contractual arbitration clause that Defendant invokes in this case.  *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404-05 (1967)(holding that courts have jurisdiction under the FAA to determine the contractual enforceability of an arbitration clause).

Plaintiff was employed in Ohio.  "State law governs 'generally applicable contract defenses [to an arbitration clause], such as fraud duress, or unconscionability.'"  *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002)(quoting *Doctor's Assoc. Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S. Ct. 1652 (1996)).  To determine whether or not Plaintiff should be bound by the mandatory arbitration agreement in the Solutions program, the undersigned will apply Ohio contract law.  However, "[t]he federal policy

favoring arbitration…is taken into consideration even in applying ordinary state law." *Jones v. U-Haul Co. of Mass. and Ohio Inc.*, 16 F. Supp.2d 922, 932 (S.D. Ohio 2014)(citing *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1014 (6th Cir. 2003)(additional citation omitted)).

Defendant has its principal place of business in Georgia, and is engaged in the bottling and distribution of Coca-Cola products.  (Doc. 9-1, Declaration of Shequitta Parker).  In that business, Defendant employs thousands of employees throughout the United States, including Ohio.  Plaintiff is a non-union employee, employed by Defendant since February 2000, and currently employed by Defendant as an Account Manager based in Cincinnati, Ohio.  (*Id.*).

Since at least October 1, 2005 in the Cincinnati area, Defendant has used the alternative dispute resolution program entitled "Solutions," which requires the binding arbitration of legal disputes between Defendant and non-union employees.  (Doc. 9-4 at 58).  Two versions of the Defendant's Solutions program are relevant to the pending motion.

In 2005, Plaintiff attended a presentation that introduced the Solutions program. Plaintiff signed and initialed an acknowledgment of her attendance at that presentation, which included a PowerPoint handout.  (Doc. 9-1, Declaration at ¶6; *see also* Doc. 9-4 at 2).  On August 1, 2013, Plaintiff underwent training on a second version of the Solutions program and a copy of the 2013 program was made available to her.  (Doc. 9-1, Declaration at ¶5).

Plaintiff did not adhere to the alternative dispute resolution provisions of either the 2005 or the 2013 versions of the Solutions program.  Instead, she filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission (EEOC) on September 26, 2014.  On October 1, 2014, the EEOC issued a Notice of Plaintiff's Right to Sue, which Plaintiff alleges she received on October 3, 2014.  (Doc. 3).  Within the time limits specified in the Notice, Plaintiff filed suit in this Court.

### 1. The 2013 Solutions Program

In relevant part, the 2013 Solutions program provides:

The Solutions Program is an alternative dispute resolution program intended to provide for the quick, fair, and inexpensive resolution of workplace disputes among The Coca-Cola Company…and its employees… If issues cannot be resolved internally, the Company and the employee can resolve the matter with the assistance of a neutral, outside party… Solutions is a four-step issue-resolution process consisting of: Open Door, HR Facilitation, Mediation, and Arbitration.

\*\*\*

An Employee who is employed by The Coca-Cola Company in the United States of America…expresses his or her agreement to be bound by the terms of this Program by either (a) signing a written agreement expressing his or her acceptance of the terms of this Program or (b) choosing to continue his or her employment with the Coca-Cola company after being provided a copy of this Program and being informed that continuing his or her employment after the Effective Date constitutes acceptance of the terms of this Program.

\*\*\*

The legal consideration provided to an Employee by The Coca-Cola Company for this Program (and any modification of this Program) includes, but is not necessarily limited to … the Employee's employment or continued employment with The Coca Cola Company.

\*\*\*

4

[Subject to certain exceptions], "Issue" means any and all work-related disputes, controversies, or disagreements between an Employee and the Company.

****

"Legal Disputes" means any Issue that is governed by U.S. Law and that involves any legal or equitable claims, defenses, demands, or controversies, of whatever nature or kind, whether in contract, tort, under statute or regulation, or some other law.  Legal Disputes can include, but are not limited to…(iii) any other matter related to the relationship between an Employee and the Company, including …claims of discrimination based on race [and] sex…

 (Parker Decl. at ¶4, Exhibit 9-1, pp. 1-12).

## 2.  The 2005 Solutions Program

The provisions of the pre-existing 2005 Solutions program were substantially similar, but not identical to, the 2013 Solutions program.  For purposes of the pending motion, the most relevant differences between the two programs concern the parties' assent.   The 2005 Program generally states:  "This Program applies to and binds the Company, each Employee, and the heirs, beneficiaries, and assigns of the Employee." (Doc. 9-4 at 50).  Two additional paragraphs pertain to the formation of a contractual agreement.  Paragraph 14 bears the caption "**Assent**," and states:  "Employment  or continued employment after the Effective Date of this  Program constitutes consent by both the Employee and the Company to be bound by this Program, both during the employment and after termination of employment."  (Doc. 9-4 at 56, emphasis original). Paragraph 15, with the heading, "**Consideration**," further states:

Consideration for this Program includes, but is not limited to:
A.  employment or continued employment after the Effective Date of the Program, understanding that the relationship remains one of employment at will…

(*Id.*).

### B.  Whether Plaintiff Assented to the Solutions Program

Plaintiff first asserts that she was unaware that Defendant considered her to be contractually bound by the Solutions program.  (Declaration of Plaintiff, Doc. 21-1).  She specifically disavows knowledge of "the existence of the Solutions Program" at the "time of filing suit."  However, ignorance of a particular provision of a contract is not grounds for avoiding it, if the contract is otherwise valid and enforceable.   Therefore, Plaintiff's recollection and/or knowledge of the Solutions program at the time of filing suit is largely irrelevant to the question of whether she agreed to be contractually bound by the Solutions program during the tenure of her employment.

Importantly, Plaintiff does not dispute the presence of consideration, the fact that Title VII claims are subject to arbitration provisions, or that such claims are within the scope of the Solutions program in this case –*if* she is contractually bound by the arbitration provision in question.  (Doc. 21 at 5, n.2).  In other words, the sole issue for this Court's consideration is whether Plaintiff assented to the Solutions program.

Plaintiff argues that she did not assent to Solutions in 2013, because the 2013 program states that it applies only when an employee either affirmatively signs an agreement to be bound (which Plaintiff did not do), or when an employee "choos[es] to continue his or her employment with the Coca-Cola company *after being provided a copy* of this Program and being informed that continuing his or her employment after the Effective Date constitutes acceptance of the terms of this Program."  (emphasis added).

Defendant has provided an affidavit stating that Plaintiff underwent training on the 2013 Solutions program on August 1, 2013, and that a copy of the 2013 revised program was "made available" to her at that training session. (Doc. 9-1, Declaration at ¶5). Plaintiff does not deny that she attended the training program, despite noting that Defendant has not produced a "signed" attendance sheet.[1] In the absence of any contrary evidence, the undersigned finds no genuine issue of material fact exists that Plaintiff attended the August 1, 2013 training for the 2013 Solutions program.

However, Plaintiff vigorously argues that the program on its face applies only to employees who continue their employment "after being provided a copy of this Program." She contends that she is not bound, despite continuing her employment, because she was never "provided a copy." Again, Plaintiff does not dispute the Defendant's representation that "*a copy* of the 'Solutions' program *was made available to her*" at the time of the August 2013 training. (Doc. 9-1 at ¶5, emphasis added). Instead, she contends that a copy being "made available" is not equivalent to having been "provided a copy," which is contractually required for assent. Plaintiff hypothesizes that there is no evidence she actually read and reviewed the copy that was "made available" to her, nor is there any evidence that a physical copy of the 2013 Program was given to her to review. Plaintiff has attached an affidavit to her response in which she specifically denies receipt of "a copy of the Solutions Program prior to filing suit." (Doc. 21-1 at ¶3).

---

[1]The Defendant has attached to its motion a copy of the "Learning Management System document" which purports to be an electronic verification of Plaintiff's attendance at the 2013 training. Since Plaintiff does not directly dispute having attended the training, there is no need to determine the sufficiency of Defendant's additional proof.

The undersigned rejects Plaintiff's argument, and finds that her attendance at the 2013 training where a copy of the Solutions program was made available to her, in conjunction with her decision to continue her employment, provides sufficient evidence of her assent to be bound by the mandatory arbitration provision.  Plaintiff does not dispute that she electronically verified completion of the 2013 training.  The training permitted Plaintiff to print a copy of the policy.  The electronic acknowledgement completed by Plaintiff provides as follows:

> By clicking on the "Acknowledge Policy" button below, I acknowledge that I have received a copy of The Coca-Cola Company Solutions Program and understand that it applies to me.  I further acknowledge that if I have any questions about The Coca-Cola Company Solutions Program, I should contact my supervisors and/or the Employee Relations Team (888.818.4373).  I understand that if I don't have access to the CCR Portal, I may request a printed copy of The Coca-Cola Company Solutions Program from my supervisor.

(Doc. 22-1 at ¶9).  *Accord Rembert v. J.C. Penney Corp.*, 2014 WL 790785, at *3 (S.D. Ohio, Feb. 26, 2014)("It is not Defendant's fault if Plaintiff elected not to read the arbitration agreement and the related rules.").

While attempting to distinguish the considerable body of case law that supports Defendant's position, Plaintiff has failed to cite to any case that would support a ruling in her favor.  Plaintiff's position would allow an employee to avoid assenting to a mandatory contractual condition of employment merely by later pleading ignorance – even if that ignorance was occasioned by the employee's own negligence in failing to review the terms of a contract made readily available to her.  Although there does not appear to be a case within this circuit that is factually identical in *every* respect, many

Sixth Circuit cases and district court cases within this circuit, as well as other federal courts, have rejected Plaintiff's position on very similar fact patterns.

For example, in *Haskins v. Prudential Ins. Co. of America*, 230 F.3d 231 (6th Cir. 2000), overruled on other grounds by *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 645 (6th Cir. 2003)(*en banc*), the Sixth Circuit held that an employee should not be released from an arbitration agreement merely because he or she did not recall signing a document that included a general arbitration clause, which did not specifically delineate the types of claims subject to arbitration but instead incorporated "the rules, …or by-laws of the organizations with which I register."  One such organization was the National Association of Securities Dealers ("NASD").  The NASD Code contained more specific arbitration provisions, but the plaintiff argued to the trial court that he should not be compelled to arbitrate because he had not received a copy of the NASD Code, and was not familiar with the arbitration clause.  Reversing, the Sixth Circuit flatly rejected the plaintiff's "ignorance is bliss" approach, citing with approval the holding of another court that "the failure of a party to obtain an explanation of a contract is ordinary negligence," and that a party therefore is estopped "from avoiding the contract on the ground that the party was ignorant of the contract provisions…in the absence of circumstances fairly excusing his failure to inform himself."  *Haskins*, 230 F.3d at 239 (citing *Beauchamp v. Great West Life Assurance Co.*, 918 F. Supp. 1091, 1097-98 (E.D. Mich. 1996)(citations omitted)).  In general, the Sixth Circuit has held that "a contracting party has an affirmative duty to familiarize itself with the terms and conditions contained in other

documents incorporated by reference." *Glenn Hunter & Assoc., Inc. v. Union Pacific R. Co.*, 135 Fed. Appx. 849, 855 (6th Cir. 2005).

The Sixth Circuit has similarly upheld the validity of consent by continued employment. In *Dantz v. Am. Apple Grp., LLC*, 123 Fed. Appx. 702, 708 (6th Cir. 2005), the Sixth Circuit upheld an arbitration provision despite the plaintiff's contention that she did not specifically assent to it. The district court held that the arbitration provision was a unilateral but binding contract that Dantz "accepted by performance," since the program specified that the agreement was an explicit condition of employment, and made clear that continued employment manifested assent. "Mutual assent is manifested by Dantz's continued employment after having been told explicitly that the arbitration agreement was a condition of her employment." *Id.*; *see also Porter v. MC Equities, LLC*, 2012 WL 3778973 at *6 (N.D. Ohio 2012)("an employer's continued employment with her employer alone is sufficient consideration for an arbitration agreement under Ohio law.").

In *Jones v. U-Haul Co. of Massachusetts and Ohio Inc.*, 16 F. Supp.3d 922, 928 and 935 (S.D. Ohio 2014), another court within this district upheld an arbitration agreement notwithstanding the lack of affirmative signature, because "by continuing her employment with defendants for six years, Jones's conduct alone was sufficient to bind her."). In *Jones*, as here, the employer had submitted evidence that the employee agreed to two separate versions of an arbitration program. The court first rejected the position of the employee that her signature to an earlier version of the program should not bind her because she was not a new employee, pointing to language that

10

specifically stated that the employee's "decision to accept employment or to *continue* employment…constitutes your agreement to be bound." *Id*. at 933 (emphasis original). The court reiterated that if one who signs a contract "cannot say that he or she is misled into signing an agreement that is different from the agreement the person intended to sign, when that person could have ascertained what agreement he was entering into by merely reading it when he signed it." *Id.* at 934 (internal quotation marks and citation omitted). Relying on *Dantz*, the court also rejected the plaintiff's position that she did not recall signing a later version of the agreement, reiterating that "assent to a contract can be manifested through continued employment." *Id.* at 935 (citation omitted); *accord Brown v. Coca-Cola Enterprises, Inc*, 2009 WL 1146441 (E.D.N.Y. April 28, 2009)(enforcing Solutions program based on notice to employees that continued employment constituted consent, despite lack of signature); *Sierra v. Isdell*, 2009 WL 2179127 (M.D. Fla, July 21, 2009); *Molina v. Coca-Cola Enterprises*, 2009 WL 1606433 (W.D.N.Y., June 8, 2009)(signature on arbitration agreement as well as continuation of employment); *Lee v. Coca-Cola Enterprises*, 2008 WL 920742 (W.D. La., Mar. 4, 2008).

At the end of the day, considering the strong federal policy favoring arbitration in conjunction with the above body of case law, the undersigned rejects Plaintiff's argument that a copy being "made available" to her at the 2013 training program differs substantially from being "provided a copy." On the record presented, such semantics amount to far too slender a reed to avoid being contractually bound to the 2013 Solutions program. There is no genuine dispute that Plaintiff attended the 2013 training program that explained the updated program and there is likewise no dispute that she

11

previously was (or should have been) aware of the existence of the 2005 Solutions program.  Both programs made clear that continued employment constituted assent. The 2013 program included specific language that "legal consideration provided to an Employee by The Coca-Cola Company for this Program (and any modification of this Program) includes, but is not necessarily limited to … the Employee's employment or continued employment with The Coca Cola Company."  Although the language of the 2013 program contained an additional clause that assent was based upon "choosing to continue…employment with the Coca-Cola company after being provided a copy of this Program and being informed that continuing his or her employment after the Effective Date constitutes acceptance of the terms of this Program," the fact that a copy was "made available" at the training program substantially satisfied that clause under existing law.

Plaintiff unsuccessfully attempts to distinguish the case law relied upon by Defendant, arguing that in *Jones*, the employee had submitted an electronic signature agreeing to arbitration.  However, the court clearly stated that the agreement would have been valid even without the signature based upon the fact that the employer explicitly informed the employee that the agreement to arbitrate was a condition of employment.  *Id.*, 16 F. Supp.3d at 934-35.  Plaintiff also notes that in *Dantz,* the employer sent a letter to its employees, protesting that by contrast, she was not separately informed that participation in the 2013 Solutions program was a mandatory condition of employment.  Although the 2013 Solutions program itself stated that continued employment constituted acceptance, Plaintiff maintains that condition was

12

satisfied only if/when the employee was separately informed, and provided a physical copy of the program.  Because Plaintiff asserts she did not physically receive and read a copy of the program, she argues that she did not accept its terms.  However, neither *Dantz* nor subsequent cases require the employer to send separate notification of binding arbitration clauses.  Because a copy being "made available" to Plaintiff was the functional equivalent to being "provided a copy" on the facts presented, a finding that Plaintiff did not assent in this case, on grounds that she chose not to avail herself of the opportunity to read the terms of the agreement at the training program, would be contrary to Ohio law.

In the alternative, the undersigned finds that Plaintiff remains bound by the substantially similar 2005 Solutions Program.  Plaintiff signed an attendance sheet that reflected her attendance at the 2005 training on the Solutions program, and acknowledges receipt of the PowerPoint handout presented at that time.  She does not appear to contest that she initialed that she actually received a copy of the 2005 Solutions Program, but even if she were to now contest the validity of the sign-in sheet, it would be irrelevant.  *See generally Lee v. Coca-Cola Enterprises*, 2008 WL 920742 at *1-2 (plaintiff's signature on sign-in sheet at orientation meeting for Solutions program, plus continued employment, evidenced consent to agreement).   As plainly set forth in Paragraphs 14 and 15 of the 2005 Solutions program, and as Plaintiff herself concedes, "continued employment…constituted assent."  (Doc. 21 at 3).  Plaintiff does not deny the existence of the referenced language, but instead merely points out that the language was not particularly highlighted, and that there is no evidence that she

personally read the language or otherwise "was aware" of the fact that continuing her employment constituted assent.  However, as discussed above, Plaintiff's failure to read contractual language that she could have reviewed does not excuse her from compliance with the contract under Ohio law.  *Accord Pennington v. Frisch's Restaurants*, 137 Fed. Appx. 463, 466 (6th Cir. 2005)(upholding arbitration agreement because, even if assent to the 2003 version of the agreement was disputed, employees had expressly acknowledged assent to the 2002 version of the agreement).

Last, Plaintiff argues she should not be held to the earlier version of the program because Defendant "clearly altered those terms in 2013, creating additional requirements to assent."  (Doc. 21 at 8).  Plaintiff cannot have it both ways, arguing that she was released from a clear prior agreement to the arbitration program based upon a new 2013 contractual agreement that she now expressly attempts to repudiate.   In addition, as Defendant points out in its reply, the 2005 Solutions program to which Plaintiff agreed expressly stated that Defendant could modify the program at any time so long as it provided employees with at least ten days' notice.  (Doc. 9-4 at p. 55 ¶11). Plaintiff's August 1, 2013 training on the 2013 program occurred well over ten days prior to its effective date in October 2013.  *See Stanich v. Hissong Grp.*, 2010 WL 3732129, at 6 (S.D. Ohio, Sept. 20, 2010)(citation omitted)(holding that arbitration clause was unenforceable where it was contained in a handbook that explicitly stated it was <u>not a contract</u>, and handbook permitted unilateral modification of agreement at any time, distinguishing cases in which "[c]ourts have enforced arbitration agreements that give

14

the [employer] the unilateral right to modify an agreement where the agreement requires the promisor to give *advance* notice of his intent to do so.")(emphasis added).

### C. Dismissal Required

Having concluded that all of the claims that Plaintiff seeks to litigate are encompassed by the mandatory and binding arbitration agreement to which she assented, I further conclude that dismissal of this case is the most appropriate course of action.  "The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration."  *Jones*, 16 F. Supp.3d at 943-944 (quoting *Green v. Ameritech Corp.*, 200 F.3d 957, 973 (6th Cir. 2000)(internal quotation marks and additional citation omitted)).

### III.  Conclusion and Recommendation

Accordingly, for the reasons discussed herein, **IT IS RECOMMENDED THAT** Defendant's motion to compel arbitration and to dismiss this case (Doc. 9) be **GRANTED**.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

DEBRA GRAGSTON,                                      Case No. 1:14-cv-986

           Plaintiff,                              Dlott, J.
                                                     Bowman, M.J.

     v.

COCA-COLA REFRESHMENTS,

           Defendant.


**NOTICE**


    Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

16